**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES of AMERICA<br><br>     against<br><br>LEOR ZAHAVI, and<br>DAVID BLUMENSON<br>     Defendants. | 12 Cr. 288 (JPO)<br><br>ECF CASE |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ZAHAVI'S MOTION TO QUASH THE GOVERNMENT'S RULE 17(C) TRIAL SUBPOENA *DUCES TECUM* DIRECTED AT EISNER LLP**

Defendant Leor Zahavi submits this memorandum in support of his Motion to Quash the Government's Fed. R. Crim. P. 17(c) trial subpoena *duces tecum* directed at Eisner LLP ("Eisner"). Eisner is a national auditing firm. Admit One, Mr. Zahavi's ticket reseller business, had retained the Eisner firm to prepare audited financial statements during a portion of the period charged in the Indictment against Mr. Zahavi. The Government now seeks to misuse the trial subpoena power of Rule 17(c) to determine if, at the eleventh hour, it can discover new evidence to use against Mr. Zahavi.

## FACTUAL BACKGROUND

On September 6, 2012, the Government served Eisner LLP with a subpoena duces tecum requiring them to appear and produce at trial on October 22, 2012 the following documents:[1]

> 1. All documents provided by AO to Eisner in connection with the 2008 AO Audit, including but not limited to:
>    a. bookkeeping and accounting records
>    b. purchase orders and invoices
>    c. payroll records
>    d. e-mails or other communications with AO officers or employees
> 2. All documents on which Eisner relied in drafting Note E on page 9 of the 2008 AO Audit Report (referencing an agreement to purchase personal seat licenses)
> 3. All documents on which Eisner relied in calculating the salaries and bonuses of Admit One members referenced in Note H on page 9 of the 2008 AO Audit Report
> 4. A list of Eisner employees involved in the 2008 AO Audit.

Ex. A.

Eisner was the outside auditor for Admit One, a national sports and entertainment events ticket reselling business run by the Defendants Zahavi and Blumenson. Leor Zahavi is the Founder and Chief Executive Officer ("CEO") of Admit One. David Blumenson is the Chief Financial Officer. Currently, Mr. Zahavi is the only member of Admit One.[2]

---

[1] The subpoena served on Eisner is attached to this memorandum at Exhibit A. The return date on the subpoena is October 22, 2012, which was the original trial date in this case. Since the government served its subpoena on Eisner, the Court adjourned the trial until November 13, 2012.

[2] Mr. Zahavi's former partner, Thomas Barbarito, who is a government cooperating witness in this case, has filed a lawsuit against Mr. Zahavi contesting the assignment of his shares in Admit One to Mr. Zahavi. Mr. Barbarito, however, never had a majority interest in the company. Mr. Zahavi has had controlling interest of the firm over the last several years.

Zahavi and Blumenson have been charged in an Indictment alleging that they committed bank fraud and made false statements to officers of Bank of America ("the bank"), which had extended a line of credit to Admit One.  The Indictment generally alleges that the Defendants defrauded the bank by transferring loan proceeds into Mr. Zahavi's personal brokerage account and then making false statements to the bank to cover up the use of that money.  The alleged false statements reported that Admit One had entered into an agreement to buy rights to tickets from New York Giants season ticket holders.  The Defendants deny these allegations.

In its subpoena to Admit One's auditors, the government now seeks documents that are not connected to these charges.  It casts an extremely broad net that does not ask for the production of specific documents that would be relevant and admissible at trial.  For these reasons, Defendants move to quash the government's subpoena to Eisner LLP.

## ARGUMENT

### I.

**LEOR ZAHAVI, AS OWNER AND CEO OF ADMIT ONE, HAS STANDING TO MOVE TO QUASH THE SUBPOENA DIRECTED TO ITS AUDITORS**

A party can move to quash a subpoena served on a third-party if the subpoena infringes on a legitimate interest of the moving party, such as where the moving party has a claim of privilege or a proprietary interest in the subpoenaed matter. *See United States v. Nachamie,* 91 F.Supp.2d 552 (S.D.N.Y. 2000); *United States v. Reyes*, 162 F.R.D. 468, 470 (S.D.N.Y.1995) (*citing Langford v. Chrysler Motors Corp.*, 513 F.2d 1121 (2d Cir.1975).  As the owner and CEO of Admit One, Mr. Zahavi has a legitimate proprietary and privacy interest in the information that Admit One provided to its auditors during their engagement.

First, Mr. Zahavi has a privacy interest in the subpoenaed records. The subpoena seeks Admit One's information, not the accountants' calculation or analysis. *See In re Flagtelecomholdings, Ltd. Secs. Litig.*, No. 02 Civ. 3400(WCC), 2006 WL 2642192, at *2 (S.D.N.Y. Sept. 13, 2006) (in addressing motion to quash subpoena to accounting firm, court holds that "a party may have a sufficient privacy interest in the confidentiality of records pertaining to their personal financial affairs so as to give them standing to challenge the subpoena"); *EEOC v. 704 HTL Operating, LLC*, Civil No. 11–845 BB/LFG, 2012 WL 1216142, *2 (D.N.M. Dec. 3, 2012) (finding standing to assert privilege or privacy interests relating to subpoenas seeking to salary information, personnel records and medical information."); *Gruitron v. Wells Fargo Bank, N.A.*, No. C 10–3461 CW (MEJ), 2011 WL 4345191, *1 (N.D.Cal. Sept. 13, 2011) (recognizing privacy interest in personnel records including applications for employment and resumes); *Halawani v. Wolfenbarger,* NO. 07-15483, 2008 WL 5188813 (E.D.Mich. December 10, 2008) (party has standing to challenge subpoena to third-party where he has a claim of personal interest in his personnel file and address).

Second, Admit One has a proprietary interest in the materials sought since most, if not all, of the materials sought by the subpoena are Admit One documents that were provided to Eisner LLP for use in preparing the financials. *See Dejean v. Nabors Drilling USA, LP*, NO. 6:10-CV-0597, 2011 WL 6157490 (W.D.La., June 08, 2011) ("Thus, if the discovery requests seek information that may have been sent by or for the party, the party has a right to challenge the discovery.").

Third, the Court has authority to address the merits of the motion to ensure that the subpoena satisfies the requirements of Fed. R. Crim. P. 17(c). *See U.S. v. Humphrey,* NO. 10CR25, 2011 WL 2532998, (W.D.N.Y. June 24, 2011); *United States v. Dupree*, NO. 10-CR-

627 (KAM), 2011 WL 2006295 (E.D.N.Y. May 23, 2011), *United States v. Treacy*, NO. 08 CR. 0366 (RLC), 2008 WL 5082884 (S.D.N.Y. December 01, 2008); *United States v. Leaver*, 358 F.Supp.2d 273 (S.D.N.Y. 2005).

## II.

### THE SUBPOENA REQUESTS TO EISNER DO NOT SATISFY THE REQUIREMENTS OF RULE 17(c)

Rule 17(c) of the Federal Rules of Criminal Procedure provides:

> (1) In General. A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Rule 17 is not a discovery device and does not permit the government (or defendant) to embark on a "fishing expedition" in hopes of discovering wrongdoing. *United States v. Nixon*, 418 U.S. 683 (1974). The Federal Rules of Criminal Procedure are clear that broad discovery is not available and Rule 17 does not change this. *See Bowman Dairy Co. v. United States*, 341 U.S. 214 (1951) ("It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms."). Whether the subpoena is returnable before or during trial, the materials sought by a Rule 17(c) subpoena must be admissible, specific, and relevant. *See, e.g., United States v. Carollo*, 2012 WL 1195194 (S.D.N.Y. April 9, 2012) (applying the *Nixon* standard of relevance, admissibility, and specificity to a subpoena returnable at trial).[3] "Missing any of these elements is fatal to a Rule 17 subpoena." *Id.* at *1 (citing *Nixon*).

---

[3] In *Carollo*, Judge Baer noted that while impeachment material may not be compelled in a Rule 17(c) subpoena seeking pre-trial production, this was because such material had not "ripened" into admissible evidence. Such material could only be compelled after a witness had testified.

Here the Government has not only failed to meet the requirements of specificity, relevance, and admissibility, it has used the subpoena to serve Eisner with what is essentially a civil discovery request – a broad request for documents and an interrogatory rolled into one. Rule 17(c), whether used to request documents at trial or before trial, does not so pervert the limited discovery afforded to parties in criminal actions. "Unreasonable, oppressive, and overbroad" subpoenas may be quashed as being outside the scope of Rule 17(c). *United States v. Salvagno*, 267 F. Supp. 2d 249, 253 (N.D.N.Y. 2003) (applying the *Nixon* standard to quash Rule 17(c) subpoenas returnable at trial because the subpoenas were overbroad and failed to meet the relevancy requirement). Documents requested must still be "relevant and material" and "admissible as evidence" to survive a motion to quash. *Gilmore v. United States*, 256 F.2d 565 (5th Cir. 1958) (finding that the trial court did not err in quashing defendant's subpoena, returnable at trial, seeking documents related to the "inner workings of the Bureau of Narcotics"). In *Gilmore*, the Fifth Circuit warned that Rule 17(c) is not available where it is issued "out of a hope that something helpful might turn up." *Id*. at 568.

Each of the government's requests to Eisner are beyond the scope of Rule 17(c) because they are overbroad, irrelevant to the charges in the Indictment, and/or do not seek specific documents which would be admissible as evidence at trial.

### A. Request One Is Impermissibly Overbroad So as To Be Nothing More Than A Fishing Expedition.

The government's first subpoena request seeks:

> All documents provided by AO to Eisner in connection with the 2008 AO Audit, including but not limited to:
> a. bookkeeping and accounting records
> b. purchase orders and invoices
> c. payroll records

6

     d. e-mails or other communications with AO officers or employees.

Ex. A.

  The vast majority of documents that is sought by this request have nothing to do with the offense charged in the Indictment – namely the allegations that Defendants diverted bank funds and made false statements to the bank about a purchase of rights to ticket licenses.  Documents concerning Admit One's payroll records, or how it accounted for daily operations, or how much was spent on purchase orders and invoices are all irrelevant and wildly overbroad to the specific charges in this Indictment.  Where a subpoena seeks materials that "far exceed the conduct charged by the Indictment," it is considered "unreasonable, oppressive, and over-broad" and should be quashed. *United States v. Salvagno*, 267 F. Supp. 2d 249, 253-54 (N.D.N.Y. 2003).

  The government cast a wide net in this subpoena with the hope of discovering something helpful to its case.  This is an impermissible use of Rule 17(c) subpoenas.  The Federal Rule simply does not permit a general "fishing expedition." Even if the government could come up with some explanation for why a bulk of these materials could be *useful* to it, Rule 17(c) cannot be used as a "device to gain understanding or explanation," *United States v. Rich*, No. S83CR.579 (SWK), 1984 WL 845, *3 (S.D.N.Y. Sept. 7, 1984).  Instead, the subpoenaing party must show with "sufficient likelihood" that the requested material will result in relevant and admissible evidence on the offenses charged. "The mere hope that the documents, if produced, may contain evidence favorable" to the party seeking production is not sufficient. *See U.S. v. Ail*, No. CR 05-325-RE, 2007 WL 1229415, *6 (D. Or. Apr. 24, 2007).

### B. *Request Two is Overbroad and Does Not Seek Specific Admissible Documents.*

In its second request, the government seeks:

> All documents on which Eisner relied in drafting Note E on page 9 of the 2008 AO Audit Report (referencing an agreement to purchase personal seat licenses).

Ex. A.

By asking for "all documents" the subpoena does not limit itself to admissible evidence. Thus, while the topic may be relevant, the request is not specific and, therefore, cannot satisfy the requirement of seeking only admissible evidence. In short, it is fatally overbroad. *United States. v. Justice*, 14 Fed. Appx. 426, 2001 WL 820902 (6th Cir. June 25, 2001) (in considering a Rule 17(c) subpoena which was returnable at trial, "Rule 17(c) authorizes the issuance of a subpoena for the production of documentary evidence at trial, but is not intended to be used for discovery… A subpoena *duces tecum* must be reasonable, specific, and the documents requested must be relevant.").

In this regard, it is important to note that the government had the power to broadly investigate this case and subpoena documents and witnesses to the grand jury. A Rule 17(c) subpoena is not to be used by the government to substitute for the grand jury investigation that should have been completed prior to trial. Here, the government did not issue a grand jury subpoena (which it could not since there was no ongoing grand jury investigation, s*ee, e.g. In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels),* 767 F.2d 26 (2d Cir. 1985)), but is rather improperly using a ***trial*** subpoena – which can only seek evidentiary materials that are relevant and specific to proving its case-in-chief – to cast a wide dragnet in hopes of discovering new facts.

### C. Request Three Seeks Information that is Irrelevant, and Again, Is Overboard.

In its third request, the government seeks:

> All documents on which Eisner relied in calculating the salaries and bonuses of Admit One members referenced in Note H on page 9 of the 2008 AO Audit Report.

Ex. A.

There is no allegation in this case of fraud or false statements related to the salaries or bonuses of the Defendants or any other members of Admit One. It is difficult to conceive the nexus between the request and the charged bank fraud. By seeking *all* documents in which Eisner relied in calculating compensation, the Government implicitly concedes it is not requesting specific, admissible evidence, but rather hopes to find something useful in its case against the Defendants. This request epitomizes the Government's misuse of this trial subpoena as an eleventh-hour "fishing expedition."

### D. Request Four Seeks Wholly Inadmissible Evidence in the Form of an Interrogatory.

In its fourth request, the government seeks:

> A list of Eisner employees involved in the 2008 AO Audit.

Ex. A.

This request asks Eisner to create a document. Because it does not seek production of a known, existing document it is an improper subpoena request. This item is written in the form of an interrogatory, which is a clearly inappropriate use of Rule 17(c). *See e.g., United States v. Kearney*, 436 F. Supp. 1108, 1117 (S.D.N.Y. 1977) (denying Rule 16 discovery requests because they were in the form of interrogatories that are not authorized by criminal discovery rules). Further, this request does not seek materials in the form of admissible evidence for trial. *See Salvagno*, 267 F. Supp. 2d at 252 (citing, *inter alia*, *Bowman,* 341 U.S. at 221).

## **CONCLUSION**

For the reasons set forth above, Mr. Zahavi's Motion to Quash the Subpoena to Eisner should be granted in its entirety.

Dated: New York, New York
       October 9, 2012

Respectfully submitted,

By: _____/S/_____
    Henry E. Mazurek
    Clayman & Rosenberg LLP
    305 Madison Avenue, Suite 1301
    New York, New York 10165
    Tel. (212) 922-1080
    mazurek@clayro.com
    *Attorneys for Defendant Zahavi*