UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
UNITED STATES OF AMERICA,                                  :
                                                           :
                                                           :        12 Crim. 288 (JPO)
                        -against-                          :
                                                           :        MEMORANDUM AND
LEOR ZAHAVI and DAVID BLUMENSON,                           :             ORDER
                              Defendants.    :
                                                           :
----------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

Presently before the Court are Defendants' motions to dismiss Counts Three and Four of

the Indictment as unconstitutionally vague, or in the alternative, for failure to state a violation of

18 U.S.C. § 1014. Defendants have also moved for an order requiring the Government to

produce a bill of particulars. For the following reasons, both motions are denied.[1]

I.   **Counts Three and Four of the Indictment**

Defendants argue that Counts Three and Four of the Indictment are unconstitutionally

vague and legally defective. In relevant part, Count Four charges as follows:

> From in or about August 2008, up to and including in or about June 2010, in the
> Southern District of New York and elsewhere, LEOR ZAHAVI and DAVID
> BLUMENSON, the defendants, knowingly made a false statement and report for
> the purpose of influencing the action of an institution the accounts of which are
> insured by the Federal Deposit Insurance Corporation, upon an application,
> advance, discount, purchase, purchase agreement, repurchase agreement,
> commitment, loan, and insurance agreement and application for insurance and a
> guarantee, and a change and extension of the same, by renewal, deferment of
> action and otherwise, and the acceptance, release, and substitution of security
> therefor, to wit, ZAHAVI and BLUMENSON, having fraudulently diverted more
> than $3 million in funds from the BOA Credit Line to ZAHAVI's personal use,
> misrepresented to Bank of America that funds from the BOA Credit Line had
> been used to purchase approximately $3.45 million in certain "personal seat
> licenses," in other to influence Bank of America in deciding what action to take in
> response to ADMIT ONE's default on the BOA Credit Line. (Title 18, United
> States Code, Section 1014)

---

[1] Familiarity with the relevant facts of the case is presumed.

Count Three, in turn, alleges Conspiracy to Make False Statements to Influence Bank Action on a Loan; in other words, Count Three alleges conspiracy to commit the same offense charged in Count Four.  The two Counts stand or fall together on the proper interpretation of § 1014.

Defendants offer two grounds for their argument that Counts Three and Four are legally deficient.  The first is based on the constitutional doctrine of vagueness.  To satisfy due process, "a penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement.  The void-for-vagueness doctrine embraces these requirements."  *Skilling v. United States*, 130 S. Ct. 2896, 2927-28 (2010) (internal citation and quotation marks omitted).  The second basis is a straightforward attack on the Government's position that § 1014 covers the alleged conduct: "Since federal crimes are solely creatures of statute, a federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute."  *United States v. Aleynikov*, 676 F.3d 71, 75-76 (2d Cir. 2012) (internal citation and quotation marks omitted); *see also* Fed. R. Crim. P. 12(b) ("A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the issue.").  Although these two challenges are analytically distinct, neither can be addressed without interpreting the statute.

Statutory interpretation begins with the text of the statute.  18 U.S.C. § 1014 provides:

> Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of . . . any institution the accounts of which are insured by the Federal Deposit Insurance Corporation . . . ., upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, loan, or insurance agreement or application for insurance or a guarantee, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor, shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

In short, 18 U.S.C. § 1014 requires the Government to establish: (1) that the defendant made a false statement or report to a lending institution; (2) that the lending institution's deposits were federally insured; (3) that the defendant knew that the statements he made were false; and (4) that the defendant made these false statements for the purpose of influencing in any way the action of that lending institution upon, *inter alia*, a loan, or any change or extension of the same, by renewal, deferment of action, or otherwise, or the acceptance, release, or substitution of security therefor.

For good reason, the parties devote a great deal of energy to textualist arguments.  It is important to note at the outset, however, that this statute serves a critical role.  Although *Williams v. United States*, 458 U.S. 279 (1982), provides clear proof that purpose rarely trumps plain text, especially in the criminal context, Justice Marshall's dissent helpfully illuminates the purpose of this scheme: "The broad statutory language clearly evinces its legislative purpose – Congress hoped to protect federally insured institutions from losses stemming from false statements or misrepresentations that mislead the institutions into making financial commitments, advances, or loans.  The statute was intended to be broad enough 'to maintain the vitality of the FDIC insurance program . . . and to cover all undertakings which might subject the FDIC insured bank to risk of loss.'"  *Id.* at 294 (Marshall, J., dissenting) (citation omitted). Section 1014 is designed to protect the integrity of the system of credit generated and maintained by federally insured banks.

Both parties acknowledge that § 1014 is a remarkably broad statute.  Although the Supreme Court in *Williams* adopted a narrow approach to the law, partly out of fear that a broader reading would "make a surprisingly broad range of unremarkable conduct a violation of federal law," *id.* at 285 (Blackmun, J.), that caution did not trump the breadth of the statutory language in the more recent case of *United States v. Wells*, 519 U.S. 482 (1997).  In *Wells*, over a

dissent by Justice Stevens listing a battery of innocent conduct that could be criminalized by its interpretation, the Court held that the false statement requirement in § 1014 does not contain a materiality element.  *Id.* at 489-499.  Looking to the plain text, the Court emphasized that the statute's "its terms cover 'any' false statement that meets the other requirements in the statute." *Id.* at 490.  The Court also turned aside the objection that it should infer a materiality term to "to avoid the improbability that Congress intended to impose substantial criminal penalties on relatively trivial or innocent conduct."  *Id.* at 498.  Because "a statement made 'for the purpose of influencing' a bank will not usually be about something a banker would regard as trivial," and because § 1014 applies only "if the speaker knows the falsity of what he says and intends it to influence the institution," the Court explained that "an unqualified reading of § 1014 poses no risk of criminalizing so much conduct as to suggest that Congress meant something short of the straightforward reading."  *Id.* at 498-99.  Thus, the Court identified the statutory requirements of *knowledge* and *purpose* as limits sufficient to cabin any concerns regarding unduly expansive liability.

The heart of Defendants' argument concerns element (4), which as described above requires that the defendant made the false statements for the purpose of influencing in any way the action of the lending institution upon, *inter alia*, a loan, or any change or extension of the same, by renewal, deferment of action, or otherwise, or the acceptance, release, or substitution of security therefor.  In sum, Defendants assert that even if the Government can prove the other elements of this offense, it cannot prove that their purpose was to influence the requisite kind of "action" by Bank of America.  Their Reply Brief lays out their interpretation of the statute:  "The only false statements criminalized by this statute are those made with the intent to influence the following bank's lending actions: (1) credit approval; (2) a change or extension of credit; (3) the acceptance or substitution of security; or (4) a release from debt obligations."  (Reply

4

Memorandum of Law in Support of Omnibus Pretrial Motions On Behalf of Defendants Leor Zahavi and David Blumenson, Dkt. No. 40, at 2-3.)  In their briefs and at oral argument, Defendants have explained in detail that they lacked any of these purposes and must therefore fall beyond the statute's compass.

The main problem with this argument is that it hinges on a faulty reading of § 1014's plain text.  In straightforward language, the statute covers false statements made to a federally insured bank "for the purpose of influencing *in any way*" that bank's "action" upon a loan.  18 U.S.C. § 1014 (emphasis added).  Given that a loan does not cease to exist even after a default occurs, the plain text of the statute directly applies to "actions" that a bank might take upon a loan even after default.  Those actions include foreclosure and liquidation, release of the loan, or sale of the loan note to a third party.  Nothing in the statute suggests reason to believe that the choice among this intertwined set of potential actions does not constitute "action . . . upon . . . [any] loan" of the sort that one might be criminally punished for intentionally seeking to influence with knowingly false statements.  Nor does the statute offer a reason to believe that default constitutes a magical moment at which the loan ceases to exist or what qualifies as "action" changes.  In other words, making false statements to a bank with the intent of influencing that bank's choice among a set of post-default actions it may choose to take upon a defaulted loan *does* fall within the statutory language.

Defendants offer several reasons to doubt this conclusion, but none succeed.  Their principal argument is that such a broad reading of "influencing in any way" impermissibly renders a different portion of the statute a nullity, specifically the subsequent enumeration of "actions" a bank might take in response to the prohibited false statements: "any change or extension of any [loan], by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor."  If the earlier portion of § 1014 covers false statements made

with the purpose of influencing action in "any" way, Defendants ask, is it not redundant to list a specific set of actions later in the statute?  Defendants further emphasize that the subsequent enumeration opens with text that appears to be a disjunctive "or," the implication of which is that § 1014 covers one class of action when it refers to "influencing in any way," and then covers a *different* class of action with the enumerated terms.  Since that is nonsensical, Defendants argue that the reference to bank "action" that is influenced "in any way" should be construed narrowly. Specifically, they argue that it is best interpreted as referring to the "approval" (in their brief) or "initial granting" (at oral argument) of any of the forms of credit specified in the statute (including a "loan").

The interpretation of "influencing in any way the action of . . . [a bank] . . . , upon any . . . [loan]" as covering only the approval or initial granting of a loan lacks textual support. Defendants point to the list of statutorily specified credit actions of which "loan" is a part, suggesting that a few of these terms – application and advance, in particular – refer to the initial granting of credit.  The implication is that the relevant "action" upon a "loan" (or any of the other enumerated credit transactions) must involve the initial granting.  While it is true that the Second Circuit has clarified that "the language of [§ 1014], limiting it to the specified credit transactions, must be given effect," *United States v. Krown*, 675 F.2d 46, 50 (2d Cir. 1982), neither text nor precedent suggests that a strict construction of the relevant credit terms somehow narrows the scope of the preceding element of "action" upon them.  Nor would it make sense to construe "loan" itself as referring to the "initial granting," since that would interact nonsensically with the subsequent enumeration of actions, many of which a bank could take *only* upon a loan, rather than a loan application.  For these reasons, it would be unduly artificial to narrow the scope of "action" to the mere granting of a loan.  The statute contains no such limitation.

Defendants' related objections do not undermine this conclusion.  Their argument that this broad reading of "action" impermissibly renders the subsequent enumeration of actions a nullity fails to appreciate that, in statutes, a seemingly disjunctive "or" can often signify "such as" or "including."  Particularly in light of the fact that § 1014 was created through the reduction of thirteen existing statutes into a single law, *see Williams*, 458 U.S. at 288, text that may seem like a redundancy is best understood as an effort to exemplify some of the most common "actions" covered by the statute.  This conclusion is confirmed by the fact that the parties – and the Court's own research – disclose no cases where a court concluded that an alleged "action" was held to fall beyond § 1014's unqualified language.  To the contrary, cases typically describe this requirement expansively.  *See, e.g.*, *United States v. Whitman*, 665 F.2d 313, 319 (10th Cir. 1981) (upholding a § 1014 jury instruction where the court instructed that "(t)he phrase 'for the purpose of influencing' means that the Defendant intended for the bank to take some action, or defer action, or forestall an inquiry into his credit situation"); *United States v. Kennedy*, 564 F.2d 1329, 1340 (9th Cir. 1977) ("The gravity of this offense is the making of false statements calculated to influence the action of the bank.").

Indeed, a broad interpretation of "action" most harmoniously accords with the statutory purpose.  *See Whitman*, 665 F.2d at 319 ("We note that the purpose of § 1014 was to cover all undertakings which might subject the FDIC insured bank to risk of loss and to protect lending institutions from deceptive practices." (internal citations and quotation marks omitted)).  Defendants have not explained, and cannot explain, why it would be unreasonable for a statute designed to protect the credit system to cover statements intended to influence bank "action" on defaulted loans, including such actions as foreclosure, liquidation, sale, and release.

By the same token, Defendants' claim that § 1014 must be construed narrowly to avoid criminalizing innocent conduct misses the mark.  The statutory requirements of *knowledge* and

*purpose* provide the requisite limitations.  Manufacturing a novel limit on the meaning of "action" covered by § 1014 is not warranted merely to prevent expansive application; this statute's undeniable breadth reflects a combination of legislative choice and Supreme Court interpretation that the Court is not free to thwart by deviating from § 1014's plain language.  *See Wells*, 519 U.S. at 499 ("[A]n unqualified reading of § 1014 poses no risk of criminalizing so much conduct as to suggest that Congress meant something short of the straightforward reading.").

The Court concludes that § 1014 *does* cover knowingly false statements made to a bank with the intent of influencing that bank's action on a loan even where the relevant bank "action" consists of post-default foreclosure, liquidation, or sale of a loan note.  Here, the Government alleges that after Admit One defaulted on its loan, Defendants knowingly made a series of false statements to Bank of America intended to influence Bank of America to take certain "actions" upon the defaulted loan (*e.g.*, sale to an allegedly friendly third party) rather than other "actions" upon that loan (*e.g.*, foreclosure and liquidation).  Thus, the Government alleges that Defendants' false statements were intended to influence Bank of America's choice among a set of actions it could take upon the defaulted loan.  This satisfies the requirement of "influencing in any way the action of [a bank]," as the relevant forms of "action" fall within § 1014 and statements intended to influence a choice among them qualifies as an effort to "influence in any way."

Because the Court concludes as a matter of law that the Government has properly alleged a violation of § 1014 as interpreted above, it need not reach the parties' other arguments.[2]

---

[2]  First, Defendants argue that "action" under § 1014 does not cover decisions by a bank to sue for fraud in relation to a loan, as a fraud suit is too "collateral" or lacks a "nexus" to the loan.  The Government retorts that "action" surely encompasses a bank's decision whether to assert contractual remedies in relation to the loan.  Because the Government has alleged an attempt influence Bank of America's choice as between foreclosure and sale to a third party – actions that fall within § 1014 – the Court need not address that argument. Second, at oral argument, the Government argued that § 1014's reference to "release" covers sale to a third party.  On that view, Defendants have allegedly violated § 1014 by intending to influence Bank of America to "release" their loan through a third party

This leaves Defendants' constitutional charge of vagueness, which fails for essentially identical reasons. The Supreme Court looks with disfavor on constitutional attacks, even in the criminal context. *See, e.g.*, *Skilling*, 130 S. Ct. at 2928 ("In urging invalidation of § 1346, Skilling swims against our case law's current, which requires us, if we can, to construe, not condemn, Congress' enactments."). Further, the Constitution does not require mathematical precision in the criminal code. *See, e.g.*, *United States v. Chestaro*, 197 F.3d 600, 605 (2d Cir. 1999) ("[S]ome ambiguity in a statute's meaning is constitutionally tolerable . . . . This holds for the penalty provisions of a criminal statute as well as for provisions proscribing conduct." (citations omitted)). So long as the language "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices," the Court has explained that "[t]he Constitution requires no more." *United States v. Petrillo*, 332 U.S. 1, 7-8 (1947). It is also a familiar observation that the presence of a *scienter* requirement ameliorates vagueness concerns. *See Hill v. Colorado*, 530 U.S. 703, 732 (2000).

To put this "as applied" vagueness challenge in perspective, the Government alleges that Defendants intentionally lied to Bank of America with the intent of influencing how Bank of America responded to their default. The gravamen of Defendants' argument is that even if they knowingly lied to Bank of America with the purpose of avoiding foreclosure and default, they could not possibly have been on notice that this conduct was criminalized by a statute whose plain language covers the making of such statements "for the purpose of influencing in any way the action of . . . [a bank] . . . ., upon any [loan]." To borrow the Supreme Court's reaction to another vagueness challenge, "[t]he likelihood that anyone would not understand any of those

---

sale rather than a liquidation. Defendants object to this characterization of sale as release. Again, the Court need not resolve that dispute at this juncture.

common words seems quite remote." *Hill*, 530 U.S. at 732.  Further, § 1014 requires both knowledge of falsity and intent to influence – requirements that militate against a finding of vagueness.  To reiterate the Supreme Court's observation in *Wells*: "[Section 1014] makes a false statement to one of the enumerated financial institutions a crime only if the speaker knows the falsity of what he says and intends it to influence the institution.  A statement made 'for the purpose of influencing' a bank will not usually be about something a banker would regard as trivial."  519 U.S. at 499.

Because Defendants were afforded sufficient notice by § 1014 that their conduct was criminal, the Court denies their motion to dismiss as unconstitutionally vague Counts Three and Four of the Indictment.

## II.  Bill of Particulars

Defendants also contend that the Court should order the Government to provide a bill of particulars.  "The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits."  Fed. R. Crim. P. 7(f).  A bill of particulars is appropriate where necessary "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (citations omitted).  "Whether to grant a bill of particulars rests within the sound discretion of the district court." *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984) (citation omitted).  "Generally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." *Bortnovsky*, 820 F.2d at 574.  "Furthermore, a bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999).

The Court does not agree with Defendants that the Indictment, particularly as elaborated by the Government's pleadings and by the Government at oral argument, is so vague or uncertain that they cannot prepare their defense. Nor does the Court see a genuine risk of a variance or a future double jeopardy issue. To the contrary, the Government has offered substantial detail regarding the charged conduct.

With respect to Counts One and Two, the Government alleges that Defendants committed fraud through a course of conduct – elaborated at length in the Government's filings – designed to conceal actions whereby over $3 million from a BOA Credit Line ended up in their personal bank accounts (or was made available for their personal use in contravention of the terms of the credit line). The Government has specified a number of false statements, described the creation of sham transactions, and detailed the fabrication of paperwork and correspondence. It has also outlined the nature of the alleged scheme, which turned on alleged lies about "personal seat licenses." There is no mystery here. Defendants are on notice of which credit line will be disputed, which bank was involved, the timeline of events, and key details of the alleged fraud – including the name of a company allegedly involved in these transfers, the alleged relationship between Defendants and that corporation, the individuals at Bank of America and hired at Bank of America's behest to whom Defendants allegedly made false statements, and the "personal seat licenses" scheme through which the fraud was allegedly concealed. The Court sees little merit in Defendants' contention that because fraud can be committed in several ways, the Government must disclose yet more information. Defendants are well-positioned to mount a robust defense.

Turning to Counts Three and Four, Defendants argue that the Government should be required to provide them with a list of particular false statements and particular bank actions that these statements were designed to influence. The Government bears no such burden. From the Indictment, motion papers, discovery, and oral argument, it is clear that the Government will

allege that Defendants made a series of false statements to Bank of America about personal seat licenses with the specific intent of influencing Bank of America to sell the defaulted loan note from its $6.5 million Credit Line to an allegedly friendly third party rather than foreclose on Admit One and liquidate its assets (or sue Admit One for fraud).  This is sufficient information to place Defendants on notice, avoid a variance at trial, and prevent double jeopardy in the future. Accordingly, Defendants' request for a bill of particulars is denied.

### III.  Conclusion

For the reasons stated above, Defendants' motions to dismiss Counts Three and Four of the Indictment and to require the Government to provide a bill of particulars are DENIED.

The Clerk of Court is directed to close the docket entry at #28.


SO ORDERED.


Dated:  New York, New York
         October 26, 2012

_____
J. PAUL OETKEN
United States District Judge